# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No.

## 1:14-cv-24840-KAM

---

## FABRIZIO DULCETTI NEVES,

### Appellant
### v.
## MARKWOOD INVESTMENTS LTD and GOLDEN DAWN CORPORATION,

### Appellees

---

## Appeal from the United States Bankruptcy Court
## for the Southern District of Florida
## Bankruptcy Case No. 10-AP-02122-LMI

---

## REPLY BRIEF OF APPELLANT, FABRIZIO DULCETTI NEVES

---

Joanne Gelfand, Florida Bar No. 515965
Michael B. Chavies, Florida Bar No. 191254
Brian P. Miller, Florida Bar No. 980633
**Akerman LLP**
One Southeast Third Avenue
25th Floor
Miami, Florida 33131-1714
Phone: (305) 374-5600
Fax: (305) 374-5095
joanne.gelfand@akerman.com
michael.chavies@akerman.com
brian.miller@akerman.com
*Attorneys for Appellant Fabrizio Dulcetti Neves*

**TABLE OF CONTENTS**

                                                                          **Page**

ARGUMENT ..................................................................................................... 1

I      GOLDEN DAWN FAILED TO SHOW THAT THE SECOND
       NOTE WAS ENFORCEABLE AT THE TIME OF THE ALLEGED
       LOSS AND THAT IT WAS NOT TRANSFERRED OR ASSIGNED
       MANDATING REVERSAL OF THE LOWER COURT'S ORDERS
       AND JUDGMENTS *i)* REESTABLISHING AND ENFORCING
       THE SECOND NOTE, *ii)* REFORMING THE SECOND NOTE
       AND *iii)* ENFORCING THE CONSOLIDATED NOTE. ........................ 1

       A.      Golden Dawn Did Not Show That The Second Note Was
               Enforceable At The Time Of Its Alleged Loss. ............................... 2

       B.      Golden Dawn Did Not Demonstrate That The Second Note
               Was Not Transferred or Assigned..................................................... 4

       C.      A. Frieri Lacked First Hand Knowledge As To the Second
               Note And Could Not Competently Testify In Support of Its
               Reestablishment................................................................................. 7

       D.      Golden Dawn Cannot Show That The Inclusion Of The
               Release Provision In The Second Note Resulted From a
               Mutual Mistake Of The Parties .......................................................... 9

       E.      The Consolidated Note Was Released By The Second Note........ 10

II     THE GENERAL RELEASE SATISFIED AND DISCHARGED
       THE CONSOLIDATED NOTE AS A MATTER OF LAW.................. 10

III    THE LOWER COURT'S FINDING THAT THE CONSOLIDATED
       NOTE WAS NOT USURIOUS WAS CLEARLY ERRONEOUS
       AND MUST BE REVERSED.................................................................. 14

       A.      The Side Agreement Was Not Contingent or Speculative
               And Golden Dawn Intended to Charge and Collect the
               Illegal Interest.................................................................................. 15

       B.      The Commission Cuts Constitute Interest and Not A Profit
               Share Exempt From the Usury Statutes. ........................................ 17

C.    The Side Agreement Flowed From the Third Underlying Note and was Carried Over to the Consolidated Note Making it Usurious. ................................................................... 19

CONCLUSION ................................................................................... 20

CERTIFICATE OF COMPLIANCE ..................................................... 21

CERTIFICATE OF SERVICE ............................................................. 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Atwood v. Fisher,*
   330 So.2d 62 (Fla. 3d DCA 1976) ................................................................. 17

*Bailey v. Harrington,*
   462 So.2d 861 (Fla. 3d DCA 1985) ............................................................... 16

*Beausejour Corp., NV v. Offshore Dev. Co.,*
   802 F.2d 1319 (11th Cir. 1986) ..................................................................... 18

*Boumarate v. HSBC Bank USA, N.A.,*
   109 So.3d 1239 (Fla. 5th DCA 2013) (*Boumarate I*) ..................................... 2

*Boumarate v. HSBC Bank USA, N.A.,*
   172 So.3d 535 (Fla. 5th DCA Aug. 14, 2015) (*Boumarate II*) ........................ 2

*Burke v. Coons,*
   136 So.2d 235 (Fla. 2d DCA 1961) ............................................................... 13

*Delgado v. Government Employees Ins. Co.,*
   528 So.2d 23 (Fla. 3d DCA 1988) ................................................................. 12

*Fuddruckers, Inc. v. Fudpucker's Inc.,*
   436 F. Supp. 2d 1260 (N.D. Fla. 2006) .......................................................... 12

*Hurt v. Leatherby Ins. Co.,*
   380 So.2d 432 (Fla. 1980) ............................................................................. 12

*In re Almengual,*
   301 B.R. 902 (Bankr. M.D. Fla. 2003) .......................................................... 12

*In re Balderrama,*
   451 B.R. 185 (Bankr. M.D. Fla. 2011) .......................................................... 12

*In re Colony Beach & Tennis Club Ass'n, Inc.,*
   423 B.R. 690 (Bankr. M.D. Fla. 2010) .......................................................... 12

*In re Giquinto,*
   388 B.R. 152 (Bankr. E.D. Pa. 2008) .............................................................. 6

*Kraft v. Mason*,
    668 So.2d 679 (Fla. 4th DCA 1996) ........................................................ 16, 17

*Loughan v. Firestone Tire & Rubber Co.*,
    749 F.2d 1519 (11th Cir. 1985) ................................................................ 5, 6

*Mazine v. M&I Bank*,
    67 So.3d 1129 (Fla. 1st DCA 2011) ..........................................................8

*Nelson v. Brunswick Corp.*,
    503 F.2d 376 (9th Cir. 1974) ....................................................................5

*Oregrund Ltd. P'ship v. Shieve*,
    873 So.2d 451 (Fla. 5th DCA 2004) ........................................................ 18

*Schwab v. Quitoni*,
    362 So.2d 297 (Fla. 3d DCA 1978) ......................................................... 16

*Steffen v. Gray, Harris & Robinson, P.A.*,
    283 F. Supp. 2d 1272 (M.D. Fla. 2003), *aff'd without opinion*, 138
    Fed. Appx. 297 (11th Cir. 2005) ............................................................. 12

*Strauss v. Douglas Aircraft Co.*,
    404 F.2d 1152 (2d Cir. 1968) ...................................................................5

*Valliappan v. Cruz*,
    917 So.2d 257 (Fla. 4th DCA 2005) ........................................................ 16, 17

*Video Trax, Inc. v. Nationsbank, N.A.*,
    33 F. Supp. 2d 1041 (S.D. Fla. 1998) ..................................................... 16

*Wilson v. Volkswagen of America, Inc.*,
    561 F.2d 494 (4th Cir. 1977) ....................................................................5

*Winters v. Sami*,
    462 So.2d 521 (Fla. 4th DCA 1985) ....................................................... 13

**Statutes**

Fla. Stat. § 673.6041(1)(b) ......................................................................... 13

Fla. Stat. § 673.3091(1)(a) ...........................................................................2

Fla. Stat. § 673.6011(1) .............................................................................. 13

Fla. Stat. § 687.03(4) ............................................................................. 17

**Rules**

Fed. R. Bankr. P. 8014 ............................................................................ 20

Fed. R. Bankr. P. 8018(b) ..........................................................................3

Fed. R. Evid. 406........................................................................... 4, 5, 6

**Other Authorities**

2 Wigmore, Evidence Sec. 376 (3d Ed. 1940).........................................5

Restatement of Contracts § 527 ........................................................... 16

## ARGUMENT

I.  **GOLDEN DAWN FAILED TO SHOW THAT THE SECOND NOTE WAS ENFORCEABLE AT THE TIME OF THE ALLEGED LOSS AND THAT IT WAS NOT TRANSFERRED OR ASSIGNED MANDATING REVERSAL OF THE LOWER COURT'S ORDERS AND JUDGMENTS i) REESTABLISHING AND ENFORCING THE SECOND NOTE, ii) REFORMING THE SECOND NOTE AND iii) ENFORCING THE CONSOLIDATED NOTE.**

Golden Dawn's inability to reestablish the Second Note, in part because it failed to introduce evidentiary proof that the note had not been transferred or assigned, resolves this appeal in its entirety in favor of Mr. Neves.

At trial, Golden Dawn failed to demonstrate that the Second Note was enforceable at the time of its loss and not assigned or transferred, mandating reversal of the bankruptcy court's order reestablishing, reforming and enforcing the Second Note. Incredibly, Golden Dawn only elicited the testimony of A. Frieri even though the witness lacked personal knowledge and could not competently testify as to the circumstances surrounding the alleged loss of the Second Note, including who last possessed the note and when it was lost, and the lack of assignment of the note. The Consolidated Note is likewise unenforceable against Mr. Neves because the Second Note released the Consolidated Note.

## A.   Golden Dawn Did Not Show That The Second Note Was Enforceable At The Time Of Its Alleged Loss.

Golden Dawn freshly suggests that the failure to demonstrate the circumstances surrounding the loss of the Second Note is not fatal to its claim to reestablish the note. *See* Response Brief at 27-28. *See also Boumarate v. HSBC Bank USA, N.A.,* 172 So.3d 535 (Fla. 5th DCA Aug. 14, 2015) (*Boumarate II*).   In *Boumarate II,* decided after the docketing of the Initial Brief, the Florida appellate court revisited the necessity of demonstrating the circumstances of how, when and by whom the note was lost. *Id.* at 537; *Boumarate v. HSBC Bank USA, N.A.*, 109 So.3d 1239 (Fla. 5th DCA 2013) (*Boumarate I*). However, the court did not eliminate the showing in its entirety, explaining that although not specifically required by the statute, the circumstances surrounding the loss must be shown "if it is required to prove that the plaintiff was entitled to enforce it when the loss occurred," a requirement under the statute. *Boumarate II*, 172 So.3d at 537 (discussing Fla. Stat. § 673.3091(1)(a)).

Thus, Golden Dawn must show the circumstances surrounding the alleged loss of the Second Note unless it can demonstrate that the note was enforceable *at the time of the loss.*   Golden Dawn proved neither below.  Setting aside that A. Frieri lacked any personal knowledge concerning the loss or transfer of the Second Note, the testimony Golden Dawn relies upon does not show that the Second Note was enforceable "when loss of possession occurred," *to wit*:

Q: And are you aware, on behalf of Golden Dawn , of anyone else that claims an interest or asserts a right to enforce the $3 million promissory note?

A: No. Only my brother and I are the only ones that are able to do that. Absolutely not.

Response Brief at 29. Trial Tr., 135:8-12.[1]

The deficient testimony does not show that the Second Note was enforceable at any moment in time, let alone "when the loss occurred." It still remains unclear if the Second Note was lost or if it was misplaced as there was no evidence below as to how and when the alleged loss occurred. Amazingly, there was no evidence introduced showing who had possession at the time of the loss making it impossible to determine if it was enforceable when the alleged loss occurred, a necessary showing under the statute. As A. Frieri admits, he never saw or handled the Second Note and his brother never told him the note was lost. Trial Tr., 143:14-144:1-8.

---

[1] The documents cited herein, which have not already been provided in the Appendix attached to the Initial Brief, are being provided to the Court in an Appendix, being filed concurrently with the Reply Brief, pursuant to Fed. R. Bankr. P. 8018(b). Such materials shall be cited as either Initial Brief App. No. __ or Reply Brief App No. __. The documents cited herein are also available to the Court in the record that was transmitted to this Court by the Bankruptcy Clerk. Citations to the record will be as follows: Docket entries in this Court will be cited as [ECF No.__]. References to docket entries in the Adversary Proceeding below will be cited as [Bankr. ECF No. __]. References to trial testimony will be cited as Name, page:line or Trial Tr., page:line. References to deposition testimony will be cited as Name Depo., page:line. References to Trial Exhibits will be cited as Trial Ex.__.

Golden Dawn failed to introduce any evidence showing that the Second Note was enforceable at the time of its loss or the circumstances surrounding the alleged loss.[2]   This Court should reverse the trial court and finally assure that Mr. Neves obtains the relief he is entitled to in this fruitless and stale litigation spanning over five years.[3]

**B.      Golden Dawn Did Not Demonstrate That The Second Note Was Not Transferred or Assigned.**

Golden Dawn does not dispute that A. Frieri lacked personal knowledge of whether the Second Note was transferred or assigned.   For the first time, Golden Dawn contends that the requisite showing that the Second Note was neither transferred nor assigned was made through evidence of Frieri's habit of advising his brother, A. Frieri,  of Golden Dawn's transactions. *See* Response Brief at 30-32 (citing Fed. R. Evid. 406 ("Rule 406" or "Rule").   However, Golden Dawn is precluded from presenting evidence of habit as it failed to present evidence of any examples of the alleged habit as required as under Rule 406.

Rule 406 provides that:

---

[2] Mr. Neves does not suggest that the standard of proof for reestablishment of the Second Note is clear and convincing evidence.   Response Brief at 24 n.7.   As set forth in his Initial Brief, the proof must be clear, strong and unequivocal. *See* Initial Brief at 42-43.   This standard is not met where, as admitted by Golden Dawn here, the court made a mere inference that the Second Note was not transferred or assigned. *See* Response Brief at 31-32.

[3] The Promissory Notes do not provide for an award of attorney's fees to the prevailing party.

> Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.

Fed. R. Evid. 406.   In analyzing whether evidence constitutes admissible habit or routine practice the Eleventh Circuit stresses that "habit or pattern of conduct is never to be lightly established."   *Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519, 1524 (11th Cir. 1985) (citing *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 511 (4th Cir. 1977)).   The party must introduce evidence of example for the purpose of establishing such habit which examples must be "carefully scrutinized before admission."   *Loughan*, 749 F.2d at 1524 (citing Wilson, 561 F.2d at 511).   Without examples and scrutiny, because of the "collateral nature" of such proof, there is a danger that the Rule may permit "improper inferences . . . confusion or operate to unfairly prejudice the party against whom it is directed."   *Loughan*, 749 F.2d at 1524 (citing *Wilson*, 561 F.2d at 511 (citing *Nelson v. Brunswick Corp.*, 503 F.2d 376, 380 (9th Cir. 1974)).

Evidence of *many* examples of the alleged habit is critical because the Rule can only be triggered when the examples offered to establish such pattern of conduct or habit are "**numerous enough to base an inference of systematic conduct**." *Wilson*, 561 F.2d at 511 (citing *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152, 1158 (2d Cir. 1968) and 2 Wigmore, Evidence Sec. 376 (3d ed. 1940))

(emphasis added).  The key criteria are "adequacy of sampling and uniformity of response or ratio of reactions to situations." *Loughan v. Firestone Tire & Rubber Co.*, 749 F. 2d 1519, 1524 (11th Cir. 1985) (citing Advisory Notes, Rule 406, Fed. R. Evid.). *See In re Giquinto*, 388 B.R. 152, 167 (Bankr. E.D. Pa. 2008) (holding creditors failed to establish contractor's "habit" of inducing customers to pay deposits for work the contractor did not intend to perform pursuant to Rule 406 where creditors did not evidence universe of contractor contracts for applicable time period).

The lower court could not infer the pattern of conduct without evidence of the "critical" samples and an "adequacy of sampling."  Additionally, Golden Dawn failed to introduce evidence of any example of Frieri apprising his brother of any transaction let alone the requisite numerous examples required to permit the inference of systematic conduct under Rule 406.  A. Frieri's bare testimony that his brother would apprise him of any significant transactions engaged in by Golden Dawn such as transferring or assigning the Second Note is wholly insufficient to trigger Rule 406. *See* A. Frieri, 142:19-144:3.

Importantly, the plain language of Rule 406 is to show that the conduct on a particular occasion was in accordance with the habit or routine.  However, Golden Dawn relies on the Rule to show that the note was not assigned because particular

conduct *did not* occur on a particular occasion (Frieri did not tell his brother the note was assigned).

For these reasons, the bankruptcy court could not rely upon A. Frieri's testimony to show that the Second Note had not been assigned, pledged, transferred, seized, or the like.

### C.   A. Frieri Lacked First Hand Knowledge As To the Second Note And Could Not Competently Testify In Support of Its Reestablishment.

Golden Dawn contends that the lower court was "certainly permitted to infer under the circumstances" that the Second Note was lost and not transferred, seemingly admitting that the evidence at trial was insufficient as to both of these critical elements.   Response Brief at 31-32.   Undeniably, A. Frieri's lack of firsthand knowledge as to the loss or lack of transfer of the Second Note is fatal to its reestablishment claim.

During trial, Mr. Neves was quickly shut down from his incessant objections of lack of foundation and personal knowledge lodged during A. Frieri's testimony. Likely in an effort to move the trial along, the lower court instructed counsel for Mr. Neves to use cross examination to establish the witness's lack of knowledge and Mr. Neves did just that. *See* Trial Tr., 134:4-9.

On cross examination A. Frieri testified that his brother would have told him if Golden Dawn assigned or transferred the Second Note and because his brother

never advised him of the assignment, it must not have been assigned. *See* Trial Tr., 142:16-143:4.  When asked if he had "personal knowledge" of the lack of assignment the witness answered "I  would have found out," claiming his brother would have told him about the assignment. *Id.* Nor did A. Frieri have personal knowledge of the alleged loss.   Still relying on information gleaned from his brother, he testified that his brother never told him that the Second Note was lost but only advised him that "he could not find it". *See* Trial Tr.,  143:14-144:8.

The lower court rejected the notion that A. Frieri as corporate representative of Golden Dawn could testify without personal knowledge stating "if he doesn't have personal knowledge, he cannot testify to it" on either direct or cross examination.[4]  *See* Trial Tr., 177:13-16.   Indeed, the court recognized that Mr. Neves "very successfully objected to several questions on the basis of whatever Arturo Frieri's position is here today . . . ."  *See* Trial Tr.,  177:11-13. *See, e.g., Mazine v. M&I Bank*, 67 So.3d 1129, 1131-32 (Fla. 1st DCA 2011) (finding admission of an affidavit as a business record because the witness who testified to introduce the affidavit did not have any personal knowledge as to the preparation or maintenance of the document).

---

[4] Golden Dawn did not challenge the ruling through a cross appeal.

The lower court's reliance on the incompetent testimony of A. Frieri concerning the alleged loss and enforceability of the Second Note, or the lack of any transfer of the Second Note was clearly erroneous.

### D. Golden Dawn Cannot Show That The Inclusion Of The Release Provision In The Second Note Resulted From a Mutual Mistake Of The Parties

Without foundation, Golden Dawn relies on Frieri's testimony to show that Mr. Neves did not intend to include release language in the Second Note. Yet, Frieri is incapable of testifying as to what Mr. Neves intended as he has no personal knowledge concerning Mr. Neves or his affairs. Nor, was there any corroborating testimony. A. Frieri vaguely testified that he discussed with Mr. Neves the repayment of "some loans". Trial Tr., 131:4-5. There was no mention of the Second Note or any promissory notes and no recognition by Mr. Neves that the Second Note was enforceable or that the release contained therein was a result of any mistake. In any event, the parties entered into six notes in a very short time period and confusion as to whether a note was enforceable or released months after its execution in connection with a conversation that appeared aimed at resolving the parties' disputes does not demonstrate the requisite mutual mistake required to reform the Second Note.

Golden Dawn also claims that the trial court "expressly relied on compelling circumstantial evidence surrounding the drafting of the Second Note" indicating

that the release was mistakenly included.   Response Brief at 33.   The drafter, Aguilera, was impeached three times on cross examination and provided absolutely no testimony as to mutual mistake.   *See* Initial Brief at 17.   And even if true the drafter's mistake of including the release does not evidence Mr. Neves' mutual mistake.

The lower court erred in reforming the Second Note.

### E.    The Consolidated Note Was Released By The Second Note

Golden Dawn contends that Mr. Neves did not prove his defense of accord and satisfaction under the Second Note.   Yet, Mr. Neves pled the defense and the Second Note containing the release was introduced into evidence.   *See* Initial Brief App. No. A-2 at 12 (pleading of accord and satisfaction); Initial Brief App. No. A-28 (Second Note).   Also, Golden Dawn sought to reform the Second Note to eliminate the release of the Consolidated Note and Mr. Neves vigorously defended against the reformation.

The record clearly shows that the defense of accord and satisfaction of the Consolidated Note by the Second Note was raised below and prosecuted by Mr. Neves.

## II.    THE GENERAL RELEASE SATISFIED AND DISCHARGED THE CONSOLIDATED NOTE AS A MATTER OF LAW.

Golden Dawn does not dispute that the General Release is an accord and satisfaction as to its "claims or demands" against Mr. Neves "that had already

matured at the time of the general release's execution" on December 16, 2006. Response Brief at 18; Initial Brief at 38-39.   Moreover, Golden Dawn does not dispute that the General Release is effective as to debts, promises and sums of money that were due and owing by Mr. Neves on the date of its execution. *See* Initial Brief at 22, 38, 41; Initial Brief App. No. A-27.   Nor does Golden Dawn dispute that in rejecting Mr. Neves' complete defense of accord and satisfaction as to the Consolidated Note the lower court improperly engaged in contract interpretation and considered facts not in evidence.   Finally, Golden Dawn does not dispute that the lower court's missteps in interpreting the release resulted in a violation of its own order *in limine* precluding the introduction of any evidence as to the intent of the parties. *See* Initial Brief at 39-40.

Rather, in an interesting new twist, Golden Dawn myopically focuses solely on the term "claim" found in the General Release contending that only "claims" or causes of action were released by it under the General Release.   Response Brief at 17 *et seq.*   Golden Dawn's newest theory is a red herring that violates black letter Florida law and intentionally ignores and disregards the plain language of the General Release providing for the discharge and satisfaction of debts, sums of money, agreements and promises. *See* Initial Brief App. No. A-27.

The General Release[5] is broad and unconditional, plainly and unambiguously providing that Golden Dawn "remises, *releases, acquits, satisfies and forever discharges*" Mr. Neves from all *"debts, dues, sums of money . . . bills, [and] promises . . .*" Initial Brief App. No. A-27 (Def. Trial Ex. H-1) (emphasis supplied).

There is no dispute that the Consolidated Note constituted a debt and promise to pay at the time the General Release was executed and that the debt (and promise to pay) was satisfied and discharged by the clear terms of the General Release. *See generally, In re Balderrama*, 451 B.R. 185, 188 (Bankr. M.D. Fla. 2011) (classifying the holder of an executed and endorsed promissory note as the holder of a debt under Florida law). Under Florida law, a person entitled to enforce a note may discharge the obligation of a party to pay the note, with or

---

[5] Under Florida law, the interpretation and effect of a release is to be guided by the general principals of contract construction and contract law. *Steffen v. Gray, Harris & Robinson, P.A.*, 283 F. Supp. 2d 1272 (M.D. Fla. 2003), *aff'd without opinion*, 138 Fed. Appx. 297 (11th Cir. 2005); *Fuddruckers, Inc. v. Fudpucker's Inc.*, 436 F. Supp. 2d 1260 (N.D. Fla. 2006). Where the language of the release is clear and unambiguous, a court "cannot indulge in construction or interpretation of its plain meaning,'" *Delgado v. Government Employees Ins. Co.*, 528 So.2d 23, 24 (Fla. 3d DCA 1988) (quoting *Hurt v. Leatherby Ins. Co.*, 380 So.2d 432, 433 (Fla. 1980)); *In re Colony Beach & Tennis Club Ass'n, Inc.*, 423 B.R. 690 (Bankr. M.D. Fla. 2010) (where language in a release is clear and unambiguous the release is the best evidence of the parties' intent and the court should look to the document's plain meaning when interpreting it.); *In re Almengual*, 301 B.R. 902 (Bankr. M.D. Fla. 2003) (a court should not entertain evidence contrary to the plain meaning of an unambiguous release).

without consideration, by agreeing not to sue or otherwise renouncing rights against the party by a signed writing. *See* Fla. Stat. § 673.6041(1)(b); *Winters v. Sami*, 462 So.2d 521 (Fla. 4th DCA 1985) (decided under former law); *Burke v. Coons*, 136 So.2d 235, 237 (Fla. 2d DCA 1961) ("A negotiable instrument is discharged, among other ways, by "the intentional cancellation thereof by the holder"). *See also* Fla. Stat. § 673.6011(1) ("[t]he obligation of party to pay the instrument is discharged . . . by an act or agreement with the party which would discharge an obligation to pay money under a simply contract.").

It is of no import if the "claim" or cause of action on the Consolidated Note was not ripe nine years ago because the General Release was broad and not limited to "claims". On its face, the General Release also discharged and satisfied the Consolidated Note itself, the debt evidenced by the note, the sums due thereunder and the promise to pay the obligation. Separate consideration for the cancellation of the Consolidated is not required under the Uniform Commercial Code.[6]

The General Release is a signed writing executed by Golden Dawn wherein Golden Dawn expressly agreed to discharge and satisfy all promises, debts and sums of money that it ever or "now has," against Mr. Neves, including the then existing Consolidated Note. Initial Brief App. No. A-27.

---

[6] Golden Dawn's narrow view of the General Release also contradicts commercial law providing that a note may be cancelled *with or without consideration* by a signed writing such as the General Release. *See* Fla. Stat. § 673.6041(b).

Golden Dawn cannot refute that the bankruptcy court erred by refusing to enforce the plain terms of the General Release to bar enforcement of the Consolidated Note. The lower court erred as a matter of law mandating reversal of the judgment enforcing the Consolidated Note against Mr. Neves.

## III. THE LOWER COURT'S FINDING THAT THE CONSOLIDATED NOTE WAS NOT USURIOUS WAS CLEARLY ERRONEOUS AND MUST BE REVERSED.

Golden Dawn does not challenge and thus tacitly concedes that it never introduced any evidence below showing that the Side Agreement related to the repayment of a different and separate loan it made to Mr. Neves. *See* Initial Brief at 28; Response Brief at 6-7. Similarly, Golden Dawn concedes that there was no evidence below of any separate or new consideration for the Side Agreement. *Id.* Nor, was there any evidence below supporting Golden Dawn's latest argument that the Side Agreement was an equity kicker. Finally, Golden Dawn cannot show that the potential gain was sufficiently "speculative" at the time of the loan or that the proceeds of the loan were "substantially dependent" on the success of the venture in which they were used.

Glossing over the damning testimony of Frieri, the "financial genius,"[7] who stated that the clear intention was always to collect at least $1.55 million in Commission Cuts under the Side Agreement in addition to the contract rate of ten

---

[7] Trial Trans., 107:7.

percent (which undeniably makes the loan usurious), Golden Dawn relies on yet another new theory. Now, despite a total lack of record support, Golden Dawn claims that the Side Agreement was an equity kicker exempt from the usury statutes. *See* Response Brief at 6-11.

**A.     The Side Agreement Was Not Contingent or Speculative And Golden Dawn Intended to Charge and Collect the Illegal Interest.**

Golden Dawn concedes that the Oral Side Agreement, requiring Mr. Neves to remit five percent (5%) of his monthly commissions when they reached over a million dollars a total of thirty-one times, was part and parcel of the Consolidated Note. *See* Response Brief at 6-7. However, Golden Dawn urges the Court to view the obligation to pay the Commission Cuts as contingent or speculative which is belied by the record.

It is uncontroverted that the principal lent under the Consolidated Note (as well as ten percent interest [10%] thereon) was not at risk and was required to be paid upon maturity. *See* Initial Brief App. No. A-26 (Trial Ex. 26 stating ". . . promises to pay to the order of Golden Dawn Corporation . . . the principal sum of $4,430,000.00 with interest of ten percent (10%) per annum . . . until the principal sum hereof shall be fully paid, same being payable on July 31, 2007."). It is also uncontroverted that Golden Dawn intended to collect under the Side Agreement 31 payments of over $50,000 each, amounting to over $1.55 million, and that in Frieri's eyes, the Commission Cuts were not speculative as it was just a matter of

time until they would be paid. *See* Frieri Depo. at 100:12-25; 160:22 – 161:2; 218:15-219:2; 229:15-23.

Golden Dawn relied on inapposite decisions where the parties never had a clear intention of collecting the profits as they were speculative from the outset and payable *one time only* based on the success of the investment. For instance, in *Kraft v. Mason*, 668 So.2d 679 (Fla. 4th DCA 1996), repayment of the loan was contingent on the success of a lawsuit the loan funded. *Id.* at 684. In *Valliappan v. Cruz*, 917 So.2d 257 (Fla. 4th DCA 2005), the 45-day loan was made to fund one particular business deal, the consummation of which would be determined within those 45 days. *Id.* at 260. In *Bailey v. Harrington*, 462 So.2d 861 (Fla. 3d DCA 1985), the profit participation was not payable as no profits were realized from the failed project. *Id.* at 861-62. In *Schwab v. Quitoni*, 362 So.2d 297 (Fla. 3d DCA 1978), the mortgage (not the note) contained a provision for participation in profits, if any, of a certain housing improvement venture which failed. *Id.* at 297-98.[8]

---

[8] Golden Dawn's reliance on the Restatement of Contracts is similarly misplaced as it does not extend to usurious loans. *See* Restatement of Contracts at § 527 (cmt. a) ("A promise . . . is not usurious . . . unless a transaction is given this form as a colorable device to obtain a greater profit than is permissible"). Golden Dawn also improperly relies *Video Trax, Inc. v. Nationsbank, N.A.*, 33 F. Supp. 2d 1041 (S.D. Fla. 1998), a decision dealing with the interplay between interest and bank late fees with no real application to the instant action.

Here, the payments due under the Side Agreement were not contingent upon the occurrence of a single condition but were an obligation under the Consolidated Note and as shown in Mr. Neves' Initial Brief, Frieri believed (not hoped) that Golden Dawn would collect the 31 Commission Cuts. Critically, it is Frieri's *belief* in the value of the future Commission Cuts that drives this usury analysis. *See Atwood v. Fisher*, 330 So.2d 62 (Fla. 3d DCA 1976) (loan held usurious where the 30-day $25,000 agreement provided that a gold doubloon with an expected value of not less than $1,000 would be the consideration for the making of loan, *notwithstanding* that the gold coin could later turn out to be fake and essentially worthless).

The Commission Cuts were crucial to Golden Dawn because of the low rate of interest on the face of the Consolidate Note. Frieri Depo., 236:17 – 238:2; 238:2-12. Furthermore, unlike the parties in *Kraft* and *Valliappan*, Frieri is a sophisticated "financial genius" who knew Golden Dawn was charging and collecting an unlawful rate of interest when he structured the Consolidated Note and made the oral Side Agreement.

**B.    The Commission Cuts Constitute Interest and Not A Profit Share Exempt From the Usury Statutes.**

The exemption from usury penalties only arises if the value of the loan substantially depends on the success of the venture in which the loan proceeds are

used.   Fla. Stat. § 687.03(4).   Moreover, the "Equity Kicker Statute"[9] is an exception to the usury statute and only applies where the plaintiff shows that there is a substantial risk of loss, such as "a chance of losing one's whole investment." *See, e.g., Beausejour Corp., NV v. Offshore Dev. Co.*, 802 F.2d 1319, 1322 (11th Cir. 1986). *See also Oregrund Ltd. P'ship v. Shieve*, 873 So.2d 451, 457-58 (Fla. 5th DCA 2004) (reversing trial court which relied on Fla. Stat. § 687.03(4) and holding that the return was not, as a matter of law, a "speculative risk").

The *Oregrund* court reversed the trial court's order dismissing the action finding that the plaintiff stated a claim for usury and rejecting the defendant's contention that the exception applied.   The court held, *inter alia,* that the lender's interest in profits was not exempt from the usury statute because the loan proceeds were to be utilized by another entity and not the project generating the profits payable to the lender. *Id.* at 457.

Golden Dawn failed to introduce any evidence showing that the proceeds of the Consolidated Note were used or earmarked to fund the operations of Acosta Financial or Mr. Neves' trading practices as required by the statute.   Nor, did the trial court make the requisite finding.   Thus, Golden Dawn reverts to examining the transaction surrounding the Third Underlying Note conceding that the Commissions Cuts "flowed from the language under the Third Underlying Note"

---

[9] Fla. Stat. § 687.03(4).

and contending that the proceeds of the Third Underlying Note funded the operations of Acosta Financial.  Response Brief at 8-9.   To the extent how the proceeds of the Third Underlying Note were used is relevant to whether the exception applies to the Consolidated Note and Side Agreement, Frieri's testimony is inconsistent as he also testified that the proceeds of the Third Underlying Note were needed for a real estate business.  Frieri Depo., 226:17-23.  Finally, the Third Underlying Note which Golden Dawn relies upon provides that its terms shall not be construed as creating a partnership or joint venture between the parties.  *See* Initial Brief App. No. A-26 (Trial Ex. G-1 stating "It is expressly understood and agreed that Lender shall never be construed for any purpose as a partner, joint venturer, co-principal or associate of the undersigned or of any person or party claiming by, through or under the undersigned in the conduct of their respective businesses.").

The so called "Equity Kicker Statute" is inapplicable to the interest being charged under the Side Agreement.

### C.     The Side Agreement Flowed From the Third Underlying Note and was Carried Over to the Consolidated Note Making it Usurious.

Golden Dawn does not even attempt to show that the usury set forth on the face of the Third Underlying Note was purged by the Consolidated Note, wholly failing to refute Mr. Neves' showing that the usury was carried over.  Confident that the Side Agreement was exempt from the usury statute, Golden Dawn outright

admits that the Side Agreement "flowed from" the Third Underlying Note. Answer Brief at p. 8. As shown above, the Side Agreement is not exempted under the usury statute.

Golden Dawn's admission is fatal and demonstrates as a matter of law that the usury was carried over to the Consolidated Note.

## CONCLUSION

Based upon the foregoing arguments and authorities specifically demonstrating the complete absence of any concrete facts supporting the reestablishment of the Second Note and that the Consolidated Note was released and usurious, Appellant, Fabrizio Dulcetti Neves, respectfully requests entry of an order reversing the Bankruptcy Court's rulings enforcing the Consolidated Note against Mr. Neves (Count II); reestablishing the Second Note (Count III); reforming the Second Note (Count IV); and enforcing the Second Note against Mr. Neves (Count V), and awarding the Appellant, Mr. Neves, his costs incurred in this appeal pursuant to Federal Rule of Bankruptcy Procedure 8014, and for such other and additional relief as may be just and equitable.

## **CERTIFICATE OF COMPLIANCE**

I CERTIFY that this brief is set in Times New Roman 14-point font and complies with all of the requirements set forth in Fed. R. Bankr. P. 8015(a)(7).

Respectfully submitted,

**AKERMAN LLP**
One Southeast Third Avenue, 25th Floor
Miami, Florida 33131-1714
Phone: (305) 374-5600
Fax: (305) 374-5095

By: /s/ *Joanne Gelfand*
Joanne Gelfand
Florida Bar No. 515965
E-mail: joanne.gelfand@akerman.com
Michael B. Chavies
Florida Bar No. 191254
E-mail: michael.chavies@akerman.com
Brian P. Miller
Florida Bar No. 980633
E-mail: brian.miller@akerman.com

*Attorneys for Appellant,*
*Fabrizio Dulcetti Neves*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on October 19, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case.

By: <u>*/s/ Joanne Gelfand*</u>
    Joanne Gelfand
