UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:14-cv-24840-KAM
CASE NO. 1:15-cv-21035-KAM
CASE NO. 1:15-cv-21034-KAM
CASE NO. 1:15-cv-21036-KAM

FABRIZIO DULCETTI NEVES,

    Appellant/Appellee/Mr. Neves,

v.

MARKWOOD INVESTMENT LTD and
GOLDEN DAWN CORPORATION,

    Appellees/Appellants/Plaintiffs.
_____/

**APPELLANT/APPELLEE'S MOTION FOR SANCTIONS UNDER 28 U.S.C. § 1927 AND INHERENT POWERS WITH INCORPORATED MEMORANDUM OF LAW**

Appellant/Appellee Fabrizio Dulcetti Neves ("Mr. Neves"), through his undersigned counsel Akerman LLP, hereby files his Motion for Sanctions Under 28 U.S.C. § 1927 and Inherent Powers of the Court with Incorporated Memorandum of Law ("Motion") against putative counsel for Plaintiffs Markwood Investments Ltd. ("Markwood") and Golden Dawn Corporation ("Golden Dawn") (collectively, "Plaintiffs"). In support hereof, Mr. Neves states as follows:

### INTRODUCTION

Plaintiffs' putative counsel have been aware since December 2015 that Mr. Neves is in possession of a fully notarized, authenticated and self-effectuating General Release, Satisfaction of Final Judgment and Amended Judgment (the "General Release" and/or "Satisfaction of Judgment") which has been confirmed and re-confirmed several times to be valid and absolutely legitimate by the court of competent jurisdiction and which completely releases and discharges

{38766062;1}

Mr. Neves from all claims and liabilities asserted by Markwood and Golden Dawn, including these appeals. The General Release also recognizes that Plaintiffs' principals - the Frieris - and Plaintiffs' putative counsel have no authority to act in these proceedings or in the bankruptcy court.  The General Release and Satisfaction of Judgment was approved, authorized, confirmed and re-confirmed by the Civil and Criminal Court of Rome (the "Italian Court") and was executed pursuant to a settlement with a judicial administrator appointed pursuant to an Italian Sequestration Order as the party in legal possession and control of all of Golden Dawn and Markwood's assets.  The most recent and final re-confirmation of the validity of the General Release was on March 16, 2016, when the Italian Court rejected a "Reclamo" filed by Arturo Frieri, in which the Italian court noted that the Settlement and the General Release and Satisfaction of Judgment were "duly authorized" and "absolutely legitimate" and valid. Nevertheless, Plaintiffs' putative counsel continue to pursue baseless claims and have even illegally and unethically sought alleged "settlement funds" from Mr. Neves despite this litigation having concluded.

Mr. Neves has been extremely patient as these cases drag on notwithstanding the appointment of the Administrator as the only party with legal power over the Plaintiffs and the existence of General Release and Satisfaction of Judgment which extends to, and forever extinguishes, any and all liability he may have had as to the Amended Final Judgment.  He expended significant time and effort discovering the existence of the Sequestration Order after Plaintiffs and their putative counsel failed to disclose same.  Starting in December 4, 2015, when the General Release and Satisfaction of Judgment was notarized in Rome, there has been (and there is) no legal or factual support for Plaintiffs' continued pursuit of these appeals. Accordingly, Plaintiffs' putative counsel should be sanctioned pursuant to 28 U.S.C. § 1927 and

this Court's inherent authority for all attorney's fees and costs expended since December 4, 2015, which is the date Mr. Neves obtained the General Release and Satisfaction of Judgment.

## BACKGROUND

As demonstrated in this Motion, the misconduct in this case began as early as November 6, 2014 when the Sequestration Order was served on Plaintiffs and kept secret from Mr. Neves and the Court even before these appeals were filed. The misconduct became more egregious after December 4, 2015, when Plaintiffs' putative counsel continued to litigate and kept alive these appeals despite Mr. Neves having received a self-authenticated, notarized and absolutely legitimate General Release and Satisfaction of Judgment.

Plaintiffs, through Salvatore and Arturo Frieri (collectively, the "Frieris"), have been litigating this case since its inception in the bankruptcy court. *See generally* Memorandum Opinion on Trial (Adv. Pro. No. 10-2122, ECF No. 1014). After a February 2014 trial, the bankruptcy court issued its Final Judgment ("Original Final Judgment"; Adv. Pro. No. 10-2122, ECF No. 1022) on December 16, 2014. Approximately two months later, on February 6, 2015, Plaintiffs moved to amend the Original Final Judgment (Adv. Pro. No. 10-2122, ECF No. 1137). The bankruptcy court granted the motion, and on March 11, 2015, entered the Amended Final Judgment (Adv. Pro. No. 10-2122, ECF No. 1168).

In the meantime, but unbeknownst to Mr. Neves, and undisclosed by the Plaintiffs, the Frieris, or their counsel, the Italian Court entered the Sequestration Order sequestering and seizing Salvatore Frieri's assets, including all of Plaintiffs' assets and appointing the Administrator to take possession and control of the seized and sequestered property. *See* Sequestration Order [Case No. 1:14-cv-24840-KAM, ECF No. 53-1]; (Adv. Pro. No. 100-2122, ECF No. 1375 at Exhibit 1). The Sequestration Order was entered October 30, 2014 – over a month before the Original Final Judgment was issued. The Sequestration Order directs the

{38766062;1}

3

Frieris – Plaintiffs' representatives – to refrain from performing any act that could remove, in whole or in part, the assets of Plaintiffs without authorization of the Italian Court. Sequestration Order at 10. Plaintiffs received notice of the Sequestration Order as early as November 6, 2014. *See Id.* at p. 11; Severino Dec. Exhibit D, Article 23.

Instead of disclosing the existence of the Sequestration Order, Plaintiffs, through putative counsel and, the Frieris, continued to actively litigate this matter in violation of the Sequestration Order, including pursuing the collection and execution of the Amended Final Judgment through discovery in aid of execution.

Three months after Salvatore Frieri was personally served with a copy of the Sequestration Order, the Bankruptcy Court for the Southern District of Florida conducted a hearing in Case No. 10-02122-LMI (the "Adversary Proceeding") on, among other things, Plaintiffs' Motion to Correct Final Judgment. *See* Notice of Hearing [Adv. Pro. No. 10-02122-LMI, ECF No. 1138]. At that hearing, despite personal service of the Sequestration Order on Salvatore Frieri a few months earlier, the Plaintiffs flat out denied knowledge of a possible seizure in Italy of Markwood's assets. (Tr. of Hearing on Motion to Correct Final Judgment [Adv. Pro. 10-02122-LMI, ECF No. 1287 at 20:1-17; 24:1:15].

Several days after the hearing, Plaintiffs' putative counsel advised Mr. Neves' counsel in writing that they lacked any knowledge of the Sequestration Order, going so far as to accuse Mr. Neves' counsel of bringing up false representations to the Court stating:

> Regarding the freezing of Markwood's assets, we have confirmed with our clients, who became very upset you brought these false representations to the Court based on some unsupported internet articles, and are in the process of obtaining certification from the Italian authorities and Swiss banks confirming there is not such proceedings against Markwood. Our Clients represented that no assets of Markwood have been seized or accounts frozen at the request of any authorities. Besides the incidents that took place a couple of years ago when Salvatore was detained and place

{38766062;1}

4

on domiciliary arrest, there are not any other matter involving a criminal court or investigation our clients are aware of.[1]

On the same day, pursuant to the request of Plaintiffs' putative counsel, Mr. Neves provided information regarding the asset seizure appearing on an official website of the Italian government.[2] Even after being provided with the information available from the government of Italy, Plaintiffs' putative counsel continued pursuing claims and appeals they knew they were not authorized to pursue.

After finally obtaining a copy of the Sequestration Order, which required significant effort and costs, Mr. Neves filed in this Court his Motion for Comity and to Stay Related Appeals (the "Stay Motion") [Case No. 1:14-cv-24840-KAM, ECF No. 53] and an Omnibus Motion to Stay and for Protective Order in the Adversary Proceeding (Adv. Pro. 10-02122-LMI, ECF No. 1376).  The Stay Motion revealed, through the apostilled self-authenticating[3] Sequestration Order, that Plaintiffs, through Salvatore Frieri, received personal service of the Sequestration Order **as early as November 6, 2014** (the receipt of service acknowledged by the signature of Salvatore Frieri is also apostilled and self-authenticating).  The Stay Motion was granted by this Court on March 8, 2016 [Case No. 1:14-cv-24840-KAM, ECF No. 65].

Mr. Neves entered into settlement discussions with the Administrator that resulted in the General Release and Satisfaction of Judgment executed by the Administrator (Case No. 1:14-cv-24840-KAM, ECF No. 56-1, 56-2).  The General Release and Satisfaction of Judgment is a final, notarized, binding document, and is self-effectuating.  The Settlement fully resolved all claims

---

[1]   *See Stay Motion,* [Case No. 1:14-cv-24840-KAM, ECF No. 53, at "Composite Exhibit "5"].

[2]   *See Stay Motion,* [Case No. 1:14-cv-24840-KAM, ECF No. 53, at "Composite Exhibit "6"].

[3] *See* F.R.E. 902(3) (a document sealed by an authorized person under a foreign country's laws is self-authenticating).

between the Plaintiffs and Mr. Neves.  The Settlement was fully authorized by the Italian Court on November 20, 2015.  Order Civil and Criminal Court of Rome dated March 16, 2016 ("March 2016 Order") (Adv. Pro. 10-02122-LMI, ECF No. 1425 at Exhibit A at 5) (referencing the November 20, 2015 authorization).

On December 2, 2015, the Italian Court issued another order (the "December 2015 Order") **re-confirming** that the Administrator had "jurisdiction" over the assets that are the subject of the Settlement, *to wit,* the Amended Final Judgment, the promissory notes and the Plaintiffs' proofs of claim, and that the Administrator was authorized to enter into the Settlement with Mr. Neves.  *See* (Adv. Pro. 10-02122-LMI, ECF No. 1401 at Exhibit A).

Instead of discontinuing attempts to pursue this litigation in the United States, Plaintiffs' putative counsel advised the bankruptcy court that on or about December 19, 2015, Arturo Frieri Gallo ("Arturo Frieri") allegedly filed a "Reclamo" (the "Reclamo"), with the Italian Court purporting to challenge or appeal the Settlement and the authority of the Administrator to execute the General Release. (Adv. Pro. Case No. 10-02122-LMI,  ECF  No. 1406) .

The Court in Italy resolved the dispute on March 16, 2016, by rejecting the Reclamo. *See* Status Report Notifying Court of Italian Court's Rejection of Plaintiffs' "Reclamo" in its Entirety and Providing Notice that this Proceeding is now Ripe for Closure filed on March 22, 2016 (Case No. 1:14-cv-24840-KAM*,* ECF No. 66), and Appellant/Appellee Neves's Status Report filed on May 17, 2016 (Case No. 1:14-cv-24840-KAM*,* ECF No. 67).  In its Order, the Italian Court noted that the Administrator, who "is the holder and representative of 100% of the share capital of both" offshore entities, decided that "intervention" in the U.S. bankruptcy proceeding was *not* "conceivable" because of legal costs and collection issues. *Id.* at 1.  The Italian Court also re-confirmed that the Settlement and the General Release and Satisfaction of Judgment were "duly authorized," were "absolutely legitimate," and continue to be valid. *Id.* at

{38766062;1}

1, 5-6. The Italian Court reiterated that the Plaintiffs and their assets (including the Amended Final Judgment and Proofs of Claim) are under the Administrator's control, and found that the Plaintiffs have no right to be heard concerning the disposition of the assets. *Id*. at 5 (emphasis in original).

At this point, the Administrator's authority to enter into the Settlement and execute the General Release and Satisfaction of Judgment had been confirmed at least three times by the Italian Court, *to wit*, on November 20, 2015, December 2, 2015 and March 16, 2016.

On June 7, 2016, the Bankruptcy Court issued an order allowing putative counsel for Markwood and Golden Dawn to withdraw as counsel in the Bankruptcy Court (Adv. Pro. Case No. 10-02122-LMI, ECF No. 1432). The Bankruptcy Court allowed putative counsel for Markwood and Golden Dawn thirty days to retain new counsel. *Id.* During the hearing in the Bankruptcy Court on the motion to withdraw, putative counsel for the Plaintiffs represented on the record that they would file motions to withdraw as counsel in this Court as well by June 3, 2016. *See* Transcript of June 1, 2016, Hearing (Adv. Pro. Case No. 10-02122-LMI, ECF No. 1429) at 4-6. Plaintiffs' putative counsel had also represented to the undersigned off the record that it would withdraw from the appeals.

Instead of moving to withdraw or voluntarily dismissing the appeals, on the eve of the expiration of the deadline imposed by the bankruptcy court for new counsel to appear, Raul E. Espinoza, Esquire, the same counsel who together with two other lawyers withdrew from representing the Plaintiffs, filed a fresh notice of appearance in the bankruptcy court as putative counsel for Markwood and Golden Dawn in direct violation of the Italian Court's Orders. *See* (Adv. Pro. Case No. 10-02122-LMI, ECF Nos. 1429, 1432, 1438). Minutes later, Raul E. Espinoza, Esq. attempted to seek a purported settlement with Mr. Neves in direct violation of the

{38766062;1}

7

Italian Court's order which unequivocally held that the Frieris "were not entitled" to take part in the settlement of Plaintiffs' claims.

Having heard from the Italian Courts of competent jurisdiction, it should have become abundantly clear to Plaintiffs' putative counsel that (1) the Amended Final Judgment has been paid, released, and satisfied pursuant to self-executing, authenticated and valid documents; (2) the only party able to accept payment for Plaintiffs' assets and the only party with the authority to release the claims, the Administrator, was paid; (3) the Frieris have no authority to act over these companies, be it to hire counsel, direct counsel or pursue any claims against Mr. Neves; and (4) Plaintiffs' putative counsel has no ability to accept direction or engagement or to pursue post-release funds on behalf of the Plaintiffs unless its directly through the Administrator. The vexatious and continued pursuit of these appeals since December 4, 2015 is sanctionable.

## MEMORANDUM OF LAW

I. **LEGAL STANDARDS**

   A. **Sanctions Pursuant to 28 U.S.C. § 1927.**

28 U.S.C. § 1927[4] provides: "[a]ny attorney or other person admitted to conduct cases in any court . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the Court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "To warrant sanctions pursuant to § 1927, an attorney must: (1) engage in unreasonable and vexatious conduct; (2) this conduct must multiply the proceedings; and (3) the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct." *Young Apartments, Inc., et al. v. Town of Jupiter, Fla.*, 503 Fed. Appx 711, at *13 (11th Cir. 2013) (internal citations omitted) (affirming award against plaintiff's

---

[4] This Court sitting in its appellate capacity for the bankruptcy court can impose Section 1927 sanctions. *See In re Akros Installations, Inc.,* 834 F.2d 1526, 1531 (9th Cir. 1987)

{38766062;1}

8

attorneys under Section 1927). "An attorney multiplies the proceedings unreasonably and vexatiously only when the attorney's conduct is so egregious that it is tantamount to bad faith, which turns on the objective conduct of the attorney." *Town of Jupiter*, 2013 WL 69215, at *13 (internal citations omitted). "[O]bjectively reckless conduct is enough to warrant sanctions even if the attorney does not act knowingly and malevolently." *Norelus v. Denny's, Inc.,* 628 F.3d 1270, 1284 (11th Cir. 2010) (internal citations omitted). In determining whether an attorney's conduct violates this standard, the court compares the actions at issue with how a reasonable attorney would have acted under the circumstances. *Id.* Although an attorney need not have conducted himself with subjective bad faith to warrant the imposition of sanctions under Section 1927, where an attorney has acted with an ill intent, that factor is nonetheless relevant to the inquiry into whether sanctions should be ordered, as "conduct is more likely to be unreasonable and vexatious if it is done with a malicious purpose." *Id.* at 1284 (citation omitted). Unlike Rule 11, which is aimed primarily at pleadings, under section 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation." *Peer v. Lewis,* 606 F.3d 1306, 1314 (11th Cir. 2010). That is because purpose of the statute is "to deter unnecessary delays in litigation." *Hudson Motors Partn. v. Crest Leasing Enterprises, Inc.,* 845 F. Supp. 969, 978 (E.D.N.Y. 1994).

      **B.**    **Sanctions Pursuant to the Court's Inherent Authority.**

The Court also has the inherent authority to award sanctions against Plaintiffs' putative counsel. This authority derives from "the control vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991) ("As long as a party receives an appropriate hearing ... the party may be sanctioned for abuses of process occurring beyond the courtroom"); *see also Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306, 1320 (11th Cir. 2002) (discussing inherent power of court to

award sanctions). The key to unlocking a Court's inherent powers is a finding of bad faith which can be demonstrated, for instance, when a party delays or disrupts the litigation. *Id.* at p. 1320; *In re Akros Installations, Inc.,* 834 F.2d 1526, 1532 (9th Cir. 1987).

## II.     ANALYSIS

In Florida, a satisfaction of a judgment extinguishes any remaining rights in the judgment. *Security Ins. Co. of Hartford v. Commercial Credit Equip. Corp.*, 471 So. 2d 1302, 1302 (Fla. 3d DCA 1985). A satisfaction is the last act and end of the proceedings. *Morris N. Am., Inc. v. King*, 430 So. 2d 592, 593 (Fla. 4th DCA 1983). "A satisfaction signifies that the litigation is over, the dispute is settled, the account is paid." *Id.* Plaintiffs' putative counsel's plain refusal to acknowledge, despite the various recognitions of the validity and authenticity of the General Release and Satisfaction of Judgment by the court of competent jurisdiction, that the litigation is over, warrants sanctions. Plaintiffs' putative counsel's recent attempt to seek a supposed settlement following entry and validation of the General Release and Satisfaction of Judgment and denial of the Reclamo is outright scandalous.

### A.     Sanctions Are Warranted Under Section 1927

Mr. Neves seeks sanctions against Plaintiffs' putative counsel in the form of "costs, expenses, and attorneys' fees reasonably incurred" by his counsel since December 4, 2015, which is the date the General Release and Satisfaction of Judgment was notarized and Plaintiffs' counsel should have withdrawn the litigation. Mr. Neves has advised Plaintiffs' putative counsel in writing that the continued pursuit of their claims have no legal or factual basis.

Ignoring the entry of the Sequestration Order, which should have raised more than a few warning signs with Plaintiffs' putative counsel, the execution of the General Release and Satisfaction of Judgment and notarization on December 4, 2015 should have made it readily **apparent** to Plaintiff's putative counsel that the continued pursuit of this case is meritless.

{38766062;1}

10

Further, following denial of the "Reclamo" filed by Arturo Frieri in Italy, which was not communicated to this Court by Plaintiffs' putative counsel, it should have become **evident** to Plaintiffs' putative counsel that they have no authority to continue to prosecute these cases and that the claims and final judgment have been released.  Instead, putative counsel continued to actively litigate and stall the appeals even after Mr. Neves filed the General Release and Satisfaction of Judgment with the courts in the United States.  For example, Plaintiffs' putative counsel filed pleadings complaining that the proceedings in Italy were secret and expressing astonishment that they were revealed in the United States, they filed pleadings disclosing discovery responses obtained illegally after the Sequestration Order had been entered, they stalled the litigation by failing to dismiss it, they stood passive in the face of multiple status reports filed by Mr. Neves, they distracted Mr. Neves with promises to withdraw from representation (which was false), they failed to communicate the denial of the Reclamo filed by Arturo Frieri in Italy, and most recently they sought money from Mr. Neves post-release in direct violation of the Italian court orders and the terms of the General Release and Satisfaction of Judgment.  Plaintiffs' putative counsel's willful and guileful silence and affirmative misbehavior evidences objective reckless misconduct, dilatory tactics and bad faith and unreasonably delayed and multiplied the proceedings.  *See e.g., Town of Jupiter*, 2013 WL 69215, at *14 (pursuing baseless claim knowing no evidence supported it, exhibiting unwillingness to abandon baseless claim and forcing defendants to defend the claims).

In *In re Residential Capital, LLC*, 512 B.R. 179, 187 (Bankr. S.D.N.Y. 2014), a court awarded sanctions under Section 1927 where the claimants continued to pursue litigation against parties that had been released noting that there "was no colorable reason for Brookstone to continue litigating against Ally in California, given the clear language of the [Chapter 11] Plan"; the only explanation for the actions in failing to dismiss the case was "delay tactics."  The

{38766062;1}
11

Seventh Circuit in *Dal Pozzo v. Basic Mach. Co., Inc.,* 463 F.3d 609, 614 (7th Cir. 2006), similarly issued sanctions for "postsettlement obstructionism" where an attorney refused to proceed with closure of case after a settlement agreement had terminated all claims noting that "[i]f a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." Here, not only did Plaintiffs' putative counsel refuse to stand down in the face of a General Release and Satisfaction of Judgment confirmed to be "legitimate" and "absolutely valid" by the court of competent jurisdiction, but they went so far as to seek funds from Mr. Neves post-release!

Moreover, if the purpose of maintaining the meritless lawsuit was to leverage a supposed "second" and illegal settlement from Mr. Neves, there is no question that sanctions are in order. "It is unambiguous that a lawsuit may not be preserved for the purpose of extorting a settlement." *Edwards v. General Motors Corp.,* 153 F.3d 242 (5th Cir. 1998) (affirming Section 1927 sanctions where litigant deliberately kept her meritless case alive for no purpose other than to force defendant to settle or to defend it).

Sanctions should be imposed on Plaintiffs' putative counsel for delaying, multiplying and continuing to pursue vexatious claims against Mr. Neves.

   **B.**  **Sanctions Are Warranted Pursuant to the Court's Inherent Authority.**

Plaintiffs' putative counsel continue to litigate his frivolous claims against Mr. Neves despite a recorded, filed and self-authenticated General Release and Satisfaction of Judgment reconfirmed by court of competent jurisdiction. Had counsel conducted the most basic inquiry or acted with any modicum of ethics or general respect for the Courts, this case would have been finished when the General Release and Satisfaction of Judgment was notarized on December 4, 2015 or, at the latest, when the Reclamo was denied.

Plaintiffs putative counsel's behavior not only exhibits bad faith but also violates the Florida Bar Rules of Professional Conduct.  As noted above, putative counsel was under a duty to (1) disclose to the Courts in the United States the existence of the Sequestration Order; (2) discontinue prosecution of claims that they had no legal authority to prosecute; (3) voluntarily dismiss all cases or discontinue prosecution that had no continued legal or factual basis following entry and filing of the General Release and Satisfaction of Judgment; and (4) refuse to seek funds from Mr. Neves behind the Administrator's back and in violation of the orders entered by the Courts in Italy and the General Release and Satisfaction of Judgment.

This pattern of behavior violates the following Florida Bar Rules:

### RULE 4-3.1 MERITORIOUS CLAIMS AND CONTENTIONS

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law. A lawyer for the Mr. Neves in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

### RULE 4-3.3 CANDOR TOWARD THE TRIBUNAL

**(a) False Evidence; Duty to Disclose.** A lawyer shall not knowingly:
(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

**(b) Criminal or Fraudulent Conduct.** A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging, or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.[5]

---

[5] Italian counsel has advised the undersigned that Plaintiffs' failure to obey the orders of the Italian court constitutes a criminal violation pursuant to the Italian Code of Criminal Procedure Articles 388 and/or 650.

{38766062;1}

The behavior of Plaintiffs' putative counsel also violates Florida Bar Rule 4-8.4(b), which provides that lawyers not engage in fraud, deceit, or misrepresentation, and Rule 4-8.4(a), which states that a lawyer has the duty to not violate the Rules of Professional Conduct.  Violations of state bar rules governing the ethical behavior of attorneys can constitute conduct sanctionable pursuant to the courts' inherent powers. *United States v. Fausto Del Carpio–Cotrina,* 733 F.Supp. 95 (S.D. Fla. 1990); *Matter of Malmen*, 140 B.R. 819, 823 (Bankr. M.D. Fla. 1992) (finding bad faith and imposing sanctions under inherent power for violations of the Rules Regulating the Florida Bar among other misconduct).  *See also Hamm v. TBC Corp.*, 345 Fed. Appx. 406, 410 (11th Cir. 2009) (affirming imposition of sanctions for violations of the Rules Regulating the Florida Bar).  Additionally, Local Rule 11.1(c) states that "the standards of professional conduct of members of the Bar of this Court shall include the current Rules Regulating the Florida Bar. For a violation of any of these canons in connection with any matter pending before this Court, an attorney may be subjected to appropriate disciplinary action." *Adams v. BellSouth Telecommuncations, Inc.,* 96-2473-CIV, 2001 WL 34032759, at *1 (S.D. Fla. Jan. 29, 2001).

The continued unnecessary pursuit of these appeals as demonstrated above, in conjunction with the violations of the various Florida Bar Rules is enough to warrant a finding of bad faith and enough to warrant the imposition of sanctions under the inherent powers of the Court and Local Rule 11.1(c).  Plaintiffs' putative counsel should be subject to monetary and punitive sanctions including dismissal of these appeals.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to the Local Rules of this Court, specifically Rule 7.1(a)(3), the undersigned certifies that that they have made reasonable efforts to confer with Plaintiffs' Putative Counsel in good faith regarding the relief sought in this Motion, consisting of sending a letter with attached

{38766062;1}

draft of this Motion via e-mail to all counsel of record at 5:23 p.m. on July 22, 2016, and a follow-up phone call to lead counsel Raul Espinoza, Esq., at approximately 1:45 p.m. on July 26, 2016, but has been unable to do so.

## CONCLUSION

For the foregoing reasons, Mr. Neves respectfully requests that its Motion for Sanctions be granted and that he be awarded attorney's fees and costs incurred since December 4, 2015, that these appeals be dismissed and that he be awarded any punitive sanctions and any further relief that the Court deems appropriate.[6]

Dated July 26, 2016

        Respectfully submitted,

        **AKERMAN LLP**
        Brickell City Centre
        98 Southeast Seventh Street
        Suite 1100
        Miami, Florida 33131
        Phone: (305) 374-5600
        Fax: (305) 374-5095

        By: */s/ Brian P. Miller*
            Joanne Gelfand, Florida Bar No. 515965
            Email: joanne.gelfand@akerman.com
            Brian P. Miller, Florida Bar No. 980633
            Email: brian.miller@akerman.com
            Ilana Tabacinic, Florida Bar No: 57597
            Email: ilana.tabacinic@akerman.com
        *Attorneys for Fabrizio Dulcetti Neves*

---

[6] Following award by this Court of Mr. Neves' entitlement to sanctions, Mr. Neves respectfully requests the opportunity to present to the court contemporaneous time and expense records that specify the date, amount of time and nature of the work performed and the reasonableness and necessity for those attorney's fees and costs.

{38766062;1}

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 26, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic filing notices in this case.

By: */s/ Brian P. Miller*
Attorney
